IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LAWRENCE WEINER,<br><br>Plaintiff,<br><br>v.<br><br>LEON E. PANETTA,<br><br>Defendant. | Civil No. 11-1693 (GAG) |

## MEMORANDUM OPINION

Lawrence Weiner wanted respect from his superiors. He believes he never got it and that they discriminated against him because he is a Jewish male inflicted with depression and post-traumatic stress ("PTS").

Weiner was a vice principal at a middle school in Puerto Rico under the employ of the Department of Defense. Nancy Maldonado was his principal. The two did not get along. Weiner was transferred to the local high school under orders from the superintendent. The superintendent cited the differences between the principal and vice principal, the need for assistance with mitigating truancies in the high school, and the frequent need to oversee substitute teachers there as justification for the transfer. Weiner cried foul. He claims that, because of his gender, religion, and disabilities, Maldonado treated him poorly on the job, creating a hostile work environment, and convinced the superintendent to transfer him.

Civil No. 11-1693 (GAG)

Under the Rehabilitation Act, Americans with Disabilities Act, and Title VII, employers may not discriminate against employees based on their illnesses, perceived illnesses, or membership in a protected class. Weiner suffers from depression and PTS. He is also Jewish. Discriminating against him on these grounds is against the law.

He claims that Maldonado and the superintendent took adverse employment actions against him by mistreating him in the workplace and transferring him to the high school (a position of equal nominal stature and pay) under false pretenses. The claims for mistreatment arise from not keeping him in the loop about dangerous students, relegating him to menial, clerical, or alternative responsibilities not found in his job description, telling him to have thicker skin and not supporting him when a student's parent compared him to a Nazi, reprimanding him for then calling that parent's supervisor to tell the supervisor what the parent said, and for telling him that he did not appear ill when he requested leave and needing to ascertain how much leave he had before granting or denying his leave request.

Summary judgment is appropriate because Weiner fails to demonstrate the requisite causal connection, sufficient nexus, or discriminatory animus between his status in the protected classes and the adverse employment actions. Said differently, he fails to show that he was discriminated against because he is a person with a disability and Jewish. His own statement of facts says nothing about how he was discriminated against *because* of his faith or disabilities. The record does little more. When the most damning facts in favor of Weiner's case are taken in the light most favorable to him, they look like this: He and Maldonado did not get along; she feared him. She told him to have thicker skin when someone made a horrible comment that invoked an unspeakably tragic epoch for his particular faith. She also told him that he did not appear sick and that she would need to ascertain whether he had the requisite sick leave

Civil No. 11-1693 (GAG)

remaining or would need to use his personal leave. Nothing else in the record touches on factors relevant to a causal connection analysis.

While it is undisputed that Weiner is Jewish and disabled, Maldonado's and the superintendent's statements and actions do not create genuine issues of material fact. Not coming to Weiner's aide when a parent ostensibly made an insensitive comment pertaining to Weiner's faith probably exemplifies bad leadership, but that is not for the court to decide. But the Department of Defense is perfectly capable, and it falls outside this court's jurisdiction, to police the tactfulness and sensitivity of its employees. In the light most favorable to Weiner, Maldonado told Weiner to have thick skin and is insensitive to the magnitude and gravity of perhaps the darkest hour in the history of the Jewish faith. That's bad. Really bad. But it doesn't offend Title VII. Maldonado's failure to come to Weiner's aide does not raise a genuine issue as to whether Maldonado *acted* or *failed to act when she should have against* Weiner *because* he is Jewish. See Ploscowe v. Kadant, 121 F. App'x. 67, 70-73 (6th Cir. 2005) (finding no genuine issue of fact in Title VII case when employer told Jewish employee to "have thick skin" after employee saw Nazi flag hanging in work place, colleagues made religion-based jokes offensive to Jewish employee, Jewish employee was treated in "standoffish" manner, and third party colleague said "your people killed my God" to employee and employer failed to support Jewish employee). The Title VII claim is thus dismissed.

Weiner roots his claim for disability-based discrimination in the fact that his illness was known to his supervisors, Maldonado asked for a thorough description of his illness and how it would impact his ability to perform the essential functions of his job, and that she told him he did not appear ill and that she would need to review how many sick leave days he had to determine whether he would need to take personal leave days when he requested time off.

3

Civil No. 11-1693 (GAG)

First, it stands to reason that Weiner's supervisor would know that he has an illness. If Weiner took sick leave, he likely would have to tell Maldonado. If he was not at school, she could have reasonably inferred he was ill. Standing alone, however, this does not create the requisite causal connection. Holding otherwise would burden every employer with a triable issue when his employee takes a sick day and subsequently endures an adverse employment action.

Second, Maldonado was permitted by federal regulation to inquire as to Weiner's medical condition. See generally 5 C.F.R. § 339. She even cites the regulation in her memorandum to Weiner asking him for an explanation. (See Docket No. 47-27 at 1.) A cursory review of the regulation indicates that the questions posed in the memorandum are boilerplate and taken directly from the regulation's definition section. (See id. at 1-2;) see also 5 C.F.R. § 339.104. The court does not need to rehash the policy objectives stated in the regulation; suffice it to say that it makes sense that a principal needs to know how long a vice principal will miss work and any limitations that could impact the vice principal's completion of the essential functions of the job.

Third, and lastly, the court comes to the statement that Weiner did not appear to be ill and that Maldonado would need to review how many days of leave he had remaining. In the light most favorable to Weiner, Maldonado believed Weiner was lying about being sick. But Weiner says nothing of a consequent denial of the requested leave. In fact, the Department of Defense claims the leave was granted. Furthermore, checking to see whether Weiner had enough sick leave was part of Maldonado's job. Government employees are allotted a certain amount of leave. It would be dereliction of duty, even if it were compassionate, to approve leave *carte blanche* without first examining an employee's file to see whether sufficient leave remained.

Civil No. 11-1693 (GAG)

And Weiner does not claim that Maldonado actually denied his leave request; indeed, DOD claims Weiner was given the leave.

Weiner's opposition to the motion opposing summary judgment does him no favors and is woefully insufficient in its legal arguments. He devotes a substantial portion of the 22 page opposition to discussing the governing law and why the DOD's exhibits should be stricken for various reasons. (See Docket No. 51 at 1-18.) It is only on page 18 that Weiner begins to mount an actual legal argument in a subsection titled "C. Prima Facie Case of Discrimination." (Id.) Subsection C discusses how Maldonado was afraid of Weiner. Weiner neglects to elaborate why being afraid of someone creates the requisite causal connection. He states that it "alone can lead a reasonable jury to determine that [Maldonado and Gould] discriminated against [him] when they created and tolerated a hostile work environment by transferring him . . . ." (Id.) Maybe they did discriminate against him because Maldonado was afraid of him, but Weiner fails to describe how this fear ties to his disabilities or religion.

His own statements substantiate as much: "The fear factor . . . is of unknown origin but resulted in the adverse employment action of a transfer to a lateral position . . . . [Weiner] is [a] male, American Jew, who suffered from depression and" PTS. (Id.) Weiner tries to amalgamate his memberships in various protected classes to substantiate his claim as though he was *more* discriminated against because he was both a person with a disability and Jewish. Said differently, he tries to convince the court that, because he was a Jewish male with a disability, he was more susceptible to discrimination and it was more likely that the adverse employment actions taken against him arose from his membership in protected classes. He states, "The complex interaction of the elements of disability/medical condition, male sex, Jewish religion, and American national origin cannot be sorted out of the fear that led [Maldonado and Gould to

Civil No. 11-1693 (GAG)

take adverse employment actions against him]." (Id. at 18-19.) This argument holds no water for the reasons stated above. At some point, Weiner needed to tie the discrimination to his faith or disabilities. He failed to do so on all counts. While this argument may weigh in favor of a plausibility determination, the record must justify Weiner's claims in a specific fashion as to each point of discrimination at the summary judgment stage. It does not.

Weiner next devotes one page to his constructive discharge argument in a subheading appropriately titled "Constructive Discharge." (Docket No. 51 at 19.) He admits he accepted a voluntary incentive separation agreement to end his employment after he filed his EEO charge. (Id.) He argues that, because he filed a complaint charging his superiors with intimidation, humiliation, and other accusations only five days after agreeing to the separation, this demonstrates that he was constructively discharged. He mounts no legal argument. He cites no cases. He discusses no governing jurisprudence as it applies to the facts of his case. He also accepted a separation agreement and was thus discharged by his own pen. The court is not bound to shape Weiner's case for him. See U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

The final section of Weiner's opposition, titled "Pretext," devotes approximately one page to a discussion of why Weiner believes Maldonado had some pretextual reason for the transfer. (Docket No. 51 at 20-21.) Weiner relies on the fear Maldonado expressed for Weiner as the basis for claiming pretext. Again, he does not explain why this fear ties to his disabilities or religion. Again, he cites no cases. Again, he discusses no governing jurisprudence as it applies to the facts of his case. Again, the court is not bound to shape Weiner's case for him. Zannino, 895 F.2d at 17. There is no basis to claim pretext. Summary judgment is warranted.

Summary judgment is **GRANTED** in Defendants' favor.

Civil No. 11-1693 (GAG)

SO ORDERED.

In San Juan, Puerto Rico this 21st day of March, 2014.


/S/ Gustavo A. Gelpí
GUSTAVO A. GELPI
United States District Judge